# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

HENRY L. KLEIN, <u>PRO SE</u>, AND ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

        Plaintiff,

     v.

AMERICAN LAND TITLE ASSOCIATION,
et al.,

        Defendants.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 12-1061 (RBW)

## <u>MEMORANDUM OPINION</u>

    Plaintiff Henry L. Klein, an attorney proceeding <u>pro se</u>, brings this putative class action

against defendants American Land Title Association ("ALTA"), Fidelity National Financial

Group ("Fidelity"), First American Title Insurance Company ("First American"), Stewart Title

Guaranty Company ("Stewart Title"), and Old Republic Title Insurance Company ("Old

Republic"), challenging a title insurance policy drafted by ALTA and widely-utilized by title

insurers.  <u>See</u> Amended Complaint ("Am. Compl.") ¶¶ 8-14.  Currently before the Court is the

defendants' motion to dismiss.  Upon careful consideration of the parties' submissions,[1] the

Court concludes for the following reasons that the defendants' motion must be granted.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: the Defendants' Memorandum of Law in Support of Joint Motion to Dismiss Plaintiff's Amended Complaint ("Defs.' Mem."); Klein's Unified Opposition to Joint Rule 12(b)(6) Motion to Dismiss, Deemed a Rule 56 Motion for Summary Judgment, and Cross-Motion for Summary Judgment; the Defendants' Memorandum of Law in Further Support of Joint Motion to Dismiss and in Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment; Klein's Reply to Defendants' Memorandum of Law ". . . in Further Support of Joint Motion to Dismiss . . ." and in Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment and Enhanced Request for Oral Argument ("Klein's Reply"); Klein's Supplement to Complainant's Reply to Defendants' Memorandum of Law ". . . in Further Support of Joint Motion to Dismiss . . ." and in Opposition to Plaintiff's Cross-Motion for (continued . . .)

## I. BACKGROUND

The following factual recitation is taken from the amended complaint and the undisputed facts in the record. Klein is a member of Levy Gardens Partners 2007 L.P. ("Levy Gardens"). Am. Compl. ¶ 12. Levy Gardens owned property in New Orleans, Louisiana (the "Property"), on which it planned to construct a 100-unit multifamily housing development in the wake of Hurricane Katrina. Id. ¶ 15. To finance the project, Levy Gardens obtained loans from First NBC Bank and the Louisiana Office of Community Development (the "Community Development Office"). See id. ¶ 8; Defs.' Mem. at 3. Klein is a "guarantor of [the] two loans." Am. Compl. ¶ 8.

In connection with the two loans, on October 7, 2008, Levy Gardens purchased three title insurance policies from Commonwealth Land Title Insurance Company ("Commonwealth"), a subsidiary of Fidelity National and a non-party to this case. See id. ¶¶ 8, 12 n.2. Two of those policies are at issue here: Loan Policy No. L-14-0005193, issued in favor of First NBC Bank, and Loan Policy No. L-14-0005195, issued in favor of the Community Development Office (collectively, the "Lender Policies").[2] Id. The Lender Policies are form-policies that were drafted by ALTA and are widely-used by title insurance companies in the United States.[3] See id. ¶¶ 8-9. The policies insured First NBC Bank and the Community Development Office against title defects. See Defs.' Mem., Declaration of Patrick T. Shilling, Exhibit ("Ex.") 1 (Loan Policy

---

(. . . continued)
Partial Summary Judgment and Enhanced Request for Oral Argument ("Klein's Suppl. Reply"); the Defendants' Supplemental Memorandum of Law in Further Support of their Joint Motion to Dismiss.

[2] Levy Gardens also purchased an owner's title insurance policy from Commonwealth on October 7, 2008. Am. Compl. ¶ 12 n.2. Klein makes clear that he is "not seek[ing] any relief" regarding the owner's policy in this case. Id.

[3] According to its website, ALTA "is responsible for the forms upon which nearly all title insurance is written in the United States." ALTA Standards & Forms, http://www.alta.org/standards/index.cfm (last visited Feb. 21, 2013).

of Title Insurance for Policy Number L14-0005193) and Ex. 2 (Loan Policy of Title Insurance for Policy Number L14-0005195). The policies also included zoning endorsements that, subject to certain conditions, covered losses incurred in the event that the Property was not zoned to permit a multifamily housing development as of October 7, 2008. Am. Compl. ¶ 15.

As it turned out, a zoning ordinance passed in 1985 prohibited multifamily dwellings on the Property. Id. ¶ 17. In subsequent litigation, a Louisiana state court enjoined Levy Gardens from completing the project due to the 1985 zoning ordinance. See Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co., __ F.3d __, __, 2013 WL 376068, at *2-3 (5th Cir. 2013) (outlining the procedural history of the state court litigation). Levy Gardens then sued Commonwealth in Louisiana federal court, seeking reimbursement under its title insurance policy for the losses it incurred as a result of the zoning restriction. See id. at __, *3. The district court held, and the Fifth Circuit affirmed, that although Levy Gardens was entitled to coverage under the insurance policy, Section 8 of the policy limited Levy Gardens' recovery to the diminution in value of the Property attributable to the 1985 zoning ordinance, rather than covering all losses caused by the ordinance ("Section 8 liability limitation"). Id. at __, *3, *9.

Klein instituted this lawsuit on June 26, 2012. The defendants are title insurers (First American, Stewart Title, and Old Republic), a holding company that owns interests in title insurers (Fidelity), and an industry trade group (ALTA). See Defs.' Mem. at 1. Klein brings this action on behalf of himself and "all other similarly-situated guarantors of loans as to which the members of [the title insurance industry] have issued . . . ALTA Loan Policies" that include the Section 8 liability limitation. Am. Compl. ¶ 9. His amended complaint consists primarily of excerpts from the Louisiana litigation between Levy Gardens and Commonwealth, and a rambling narrative criticizing the title insurance industry. He does not label his claims or

3

segregate them into separate counts, so it is difficult to discern what causes of action he is asserting.  As best as the Court can tell, however, he appears to allege that the defendants conspired to include the "deceptive and misleading" Section 8 liability limitation in title insurance policies in violation of federal antitrust laws, namely the Sherman Act, 15 U.S.C. § 1 (2006), and Clayton Act, 15 U.S.C. § 15 (2006).[4]  See id. ¶¶ 3, 14, 85.

The defendants have now moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.  STANDARDS OF REVIEW

### A.      Rule 12(b)(1) Motion to Dismiss

Rule 12(b)(1) allows a party to move to dismiss "for lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  When a defendant moves to dismiss under Rule 12(b)(1), "the plaintiff[] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d 172, 176 (D.D.C. 2004); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [a] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation omitted).  "Although 'the District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the complaint standing alone,' 'where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint

---

[4] Klein also alleges that his antitrust claims are not barred by the McCarran-Ferguson Act or the filed rate doctrine. E.g., Am. Compl. ¶¶ 14, 113.  The Court construes these allegations not as independent claims for relief, but rather as preemptive responses to the defendants' anticipated defenses.

supplemented by undisputed facts plus the court's resolution of disputed facts.'"  Coal. for

Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).

**B.      Rule 12(b)(6) Motion to Dismiss**

A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief

can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule

12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the

defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  While

the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the

complaint and draw all inferences in the plaintiff's favor, conclusory allegations "are not entitled

to the assumption of truth."  Id. at 679.  "'In determining whether a complaint states a claim, the

court may consider the facts alleged in the complaint, documents attached thereto or incorporated

therein, and matters of which it may take judicial notice.'"  Abhe & Svoboda, Inc. v. Chao, 508

F.3d 1052, 1059 (D.C. Cir. 2007) (citation omitted).

## III.  ANALYSIS

The defendants move to dismiss the amended complaint on the grounds that Klein lacks

both Article III and antitrust standing.  Defs.' Mem. at 8-12.  The Court will address each

argument in turn.[5]

---

[5] Although the defendants raise lack of antitrust standing as their first ground for dismissal, the Court must assess Article III standing before considering antitrust standing.  Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 n.1 (2d Cir. 2008) (citing Kochert v. Greater Lafayette Health Servs., 463 F.3d 710, 714-16 (7th Cir. 2006)).  In addition, the Court will evaluate Article III standing under Rule 12(b)(1) and antitrust standing under Rule 12(b)(6).  See Nat'l Ass'n of Home Builders v. EPA, 667 F.3d 6, 16 (D.C. Cir. 2011) (dismissal for lack of Article III standing (continued . . . )

## A.        Article III Standing

"Because Article III limits the constitutional role of the federal judiciary to resolving

cases and controversies, a showing of standing 'is an essential and unchanging' predicate to any

exercise of [federal] jurisdiction." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir.

1996) (en banc) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "[T]o

satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in

fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it

is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision." Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., 528 U.S. 167, 180-81 (2000)

(quoting Lujan, 504 U.S. at 560-61).

Klein premises standing upon his status as a guarantor of loans for which the lenders

obtained ALTA title insurance policies containing the Section 8 liability limitation. Am. Compl.

¶ 8. He claims that as a result of "the deceptive practices carried out via the [defendants']

parallel use of ALTA forms," he is "in default for millions of dollars in guarantees and has been

bankrupted." Klein's Reply at 2 (emphasis omitted).

The Court finds these allegations sufficient to demonstrate Article III standing at this

stage of the proceedings. Klein's alleged harm—owing millions of dollars in guarantees to Levy

Gardens' lenders and being forced into bankruptcy—qualifies as an injury in fact. See Danvers

Motor Co. v. Ford Motor Co., 432 F.3d 286, 293 (3d Cir. 2005) ("Monetary harm is a classic

form of injury-in-fact. Indeed, it is often assumed without discussion." (citing Adams v. Watson,

_____

(. . . continued)
reviewed under Rule 12(b)(1)); Andrx Pharms., Inc. v. Biovail Corp. Int'l, 256 F.3d 799, 805 (D.C. Cir. 2001)
(dismissal for lack of antitrust standing reviewed under Rule 12(b)(6)).

10 F.3d 915, 920-25 & n.13 (1st Cir. 1993)).  This injury is fairly traceable to the defendants'

challenged conduct, insofar as Klein would not have to pay the guarantees but for the Section 8

liability limitation, which he claims the defendants unlawfully conspired to include in all title

insurance policies.  And this monetary injury could be redressed by an award of damages to

Klein, one of the types of relief requested in his complaint.  See Am. Compl. ¶ 113.  True, as the

defendants note, Klein did not purchase and was not insured under the Lender Policies; he

merely served as a guarantor for loans disbursed by entities that were insured under the Lender

Policies.  Defs.' Mem. at 11.  But this does not diminish his injury in the Article III sense.

Regardless of whether Klein had rights under the title insurance policies, he has asserted an

injury caused (albeit indirectly) by the defendants' challenged conduct.  The defendants'

arguments are more appropriately addressed under the rubric of antitrust standing, which has

more demanding requirements than Article III.  See Ross v. Bank of Am., N.A. (USA), 524 F.3d

217, 224-25 (2d Cir. 2008) ("Antitrust standing demands a much more detailed and focused

inquiry into a plaintiff's antitrust claims than constitutional standing."); accord Kochert v.

Greater Lafayette Health Servs., 463 F.3d 710, 715 (7th Cir. 2006); Lucas Auto. Eng'g, Inc. v.

Bridgestone/Firestone, Inc., 140 F.3d 1228, 1232 (9th Cir. 1998); Florida Seed Co. v. Monsanto

Co., 105 F.3d 1372, 1374 (11th Cir. 1997).

B.     **Antitrust Standing**

        The District of Columbia Circuit has set forth the following standards governing antitrust

standing:

> An antitrust plaintiff must establish an injury-in-fact or a threatened injury-in-fact
> caused by the defendant's alleged wrongdoing.  Moreover, the injury must affect
> the plaintiff's business or property and must be the kind of injury the antitrust
> laws were intended to prevent; it must flow from that which makes defendants'
> acts unlawful.  Additional factors to be considered in determining whether the
> plaintiff has antitrust standing include: the directness of the injury, whether the

7

claim for damages is speculative, the existence of more direct victims, the potential for duplicative recovery and the complexity of apportioning damages.

Andrx Pharms., Inc. v. Biovail Corp. Int'l, 256 F.3d 799, 806 (D.C. Cir. 2001) (internal quotation marks, citations, and alterations omitted); see also Atl. Richfield Co. v. USA Petro. Co., 495 U.S. 328, 334 (1990) (antitrust injury must be "attributable to an anticompetitive aspect of the practice under scrutiny").

As the defendants point out, see Defs.' Mem. at 9-10, courts routinely hold that guarantors lack antitrust standing where their injury is derivative of a corporate-debtor's injury, reasoning that such harm is incidental and not a direct result of anticompetitive conduct, see, e.g., Florida Seed, 105 F.3d at 1376; Lovett v. Gen. Motors Corp., 975 F.2d 518, 521 (8th Cir. 1992); Stein v. United Artists Corp., 691 F.2d 885, 896 (9th Cir. 1982); see also G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762, 766-67 (2d Cir. 1995) ("[A] party in a business relationship with an entity that failed as a result of an antitrust violation has not suffered the antitrust injury necessary for antitrust standing."); Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n, 830 F.2d 1374, 1378 (7th Cir. 1987) ("Merely derivative injuries sustained by employees, officers, stockholders, and creditors of an injured company do not constitute 'antitrust injury' sufficient to confer antitrust standing." (citation omitted)).

The Eighth Circuit's decision in Lovett is particularly instructive. There, the owner and debt-guarantor of a car dealership brought an antitrust action against General Motors Corporation ("GM") on his own behalf. 975 F.2d at 519-21. Seeking to show that he suffered an "antitrust injury," the plaintiff asserted "that as a result of GM's antitrust violations," his car dealership "was not delivered motor vehicles," and "was forced out of business and into bankruptcy; and as a direct consequence of this, . . . [he] lost virtually everything of value that he owned, his personal and business reputation were ruined and deficiency judgments were entered against

him." <u>Id.</u> at 521 (internal quotation marks and citation omitted).  The Eighth Circuit was not

convinced by this argument.  While acknowledging that the plaintiff "undoubtedly suffered

injuries as a result of GM's actions," the court found that those

> injuries were a derivative consequence of [the car dealership's] injuries.  None of
> the injuries were inflicted directly on [the plaintiff] by GM's alleged
> anticompetitive conduct.  Instead, the injuries are a direct result of [the car
> dealership's] failure.  [The plaintiff's] own explanation of his injuries shows that
> [the car dealership] was the target of GM's anticompetitive activity and that [the
> plaintiff's] injuries are simply an indirect result.  In sum, [the plaintiff's] damages
> are incidental to the alleged antitrust activity and not the type of loss Congress
> intended to prevent with the antitrust laws.

<u>Id.</u> at 521 (citations omitted).  The court added that its conclusion that the plaintiff "lack[ed]

federal antitrust standing" was "in harmony with the numerous cases routinely denying antitrust

standing to a corporation's sole shareholders, officers, employees, lessors, <u>guarantors</u>, and

creditors."  <u>Id.</u> (collecting cases) (emphasis added).

      Here, as in <u>Lovett</u>, the link between the challenged anticompetitive behavior and Klein's

injuries is too remote to qualify as an antitrust injury.  The focal point for Klein's antitrust claim

is the Section 8 liability limitation that the defendants allegedly conspired to include in title

insurance policies.  Yet, the targets of this purported anticompetitive activity are the purchasers

of the title insurance policies and those insured thereunder, for those are the entities that are

denied insurance coverage as a result of the challenged conduct.  Klein, meanwhile, is several

steps removed from the alleged anticompetitive scheme.  As a mere guarantor for a debtor (Levy

Gardens) that purchased the title insurance policies, Klein's injuries (i.e., his guarantor liability

and bankruptcy) were not <u>directly</u> caused by denials of title insurance coverage.  Rather, his

injuries were a direct result of Levy Gardens' inability to pay its loans, much like the plaintiff's

injuries in <u>Lovett</u> were attributable to the car dealership's failure.  While there may be <u>some</u>

causal connection between Klein's injuries and the Section 8 liability limitation—as the Court

acknowledged above in the Article III standing context—mere "consequential injury is not an antitrust injury."  Lovett, 975 F.2d at 521 (citation omitted); see also Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 545 (1983) ("[A]llegations of consequential harm resulting from a violation of the antitrust laws . . . are insufficient as a matter of law.").  Indeed, Klein "must have been 'the target of the anticompetitive activity, 'not one, who has merely suffered indirect, secondary, or remote injury.'"  Lovett, 975 F.2d at 520-21 (citation omitted) (emphasis added).  Because Klein has asserted only consequential harm attributable to anticompetitive conduct, he has not alleged an antitrust injury.

Klein cites no authority undermining this conclusion.  Instead, he responds to the defendants' argument that his injuries are "too indirect" by claiming that the position ignores the "realities" of his business and property damage.  Klein's Suppl. Reply at 2-3.  This misses the point.  To repeat, Klein may have suffered harm in his capacity as a guarantor, but that harm does not have a close enough connection to the alleged anticompetitive conduct to qualify as an antitrust injury.  Nor can Klein survive the defendants' motion to dismiss by offering "a 'naked assertion' of antitrust injury," for "the Supreme Court has made clear [that this] is not enough; an antitrust claimant must [instead] put forth factual 'allegations plausibly suggesting (not merely consistent with)' antitrust injury."  NicSand, Inc. v. 3M Co., 507 F.3d 442, 451 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 557).

Klein also seeks to avoid dismissal by raising new theories of liability in his opposition briefs, none of which are fairly stated in the amended complaint.  See Klein's Reply at 6-11 (asserting antitrust claim based on "unlawful tying arrangement"); Klein's Suppl. Reply at 3-4 (same); Klein's Reply at 2 (arguing that his "allegations of common-law fraud provide standing

independent of 'anti-trust injury'"). These efforts are unavailing because "'[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" McManus v. Dist. of Columbia, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007) (citation omitted); accord Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989); Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988); Car Carriers, Inc. v. Ford Motor Corp., 745 F.2d 1101, 1107 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1985). Consistent with this principle, the Court will not sanction Klein's improper attempts to reformulate his claims via his opposition briefs.[6]

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that Klein has Article III standing, but lacks antitrust standing.  Accordingly, the defendants' motion to dismiss is granted.

**SO ORDERED** this 1st day of March, 2013.[7]

REGGIE B. WALTON
United States District Judge

---

[6] Even if the Court were to address the merits of Klein's newly-raised arguments, it would still grant the defendants' motion.  Regarding the "tying" claim, Klein lacks antitrust standing to assert such a claim because he is neither a purchaser who was forced to buy the tied product nor a competitor who is restrained from entering the market for the tied product.  See Sports Racing Servs. v. Sports Car Club of Am., Inc., 131 F.3d 874, 887 (10th Cir. 1997). Klein has likewise failed to state a claim for "common law fraud" with respect to the Section 8 liability limitation, given that he did not purchase the Lender Policies and has not otherwise alleged that he took an "action in reliance" upon the defendants' alleged misrepresentations.  See Va. Acad. of Clinical Psychologists v. Grp. Hosp. & Med. Servs., Inc., 878 A.2d 1226, 1233 (D.C. 2005).  The claim also fails because it is not pleaded with particularity, as required by Federal Rule of Civil Procedure 9(b).  See United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004) (discussing Rule 9(b)'s particularity requirement for fraud claims).

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.